**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| THE ESTATE OF JAMES DEAN JANOTA,<br><br>    **Plaintiff,**<br><br>          **v.**<br><br>LOVE COUNTY BOARD OF COMMISSIONERS, *et al.,*<br><br>    **Defendants.** | **Case No. 24-CV-326-FAB-GLJ** |

**OPINION AND ORDER**

BESOSA, Senior District Judge[1]

Before the Court are four Reports and Recommendations issued by United States Magistrate Judge Gerald L. Jackson. (Docket Nos. 164-167.) Together, the magistrate judge recommends granting all the Motions to Dismiss (Docket Nos. 111, 113, 116, 137, 138) filed by the various defendants in this civil rights and negligence action involving the death of Mr. James Dean Janota. His Estate ("plaintiff") timely filed Objections to each Report and Recommendation. (Docket Nos. 170-173.) The Court will ultimately adopt the magistrate judge's recommendations, however, and **GRANT** all defendants' Motions to Dismiss.

---

[1] Of the District of Puerto Rico, sitting by designation pursuant to 28 U.S.C. § 292(d). See Docket No. 181.

**Case No.** 24-CV-326-FAB-GLJ                                                    2

## BACKGROUND

Plaintiff alleges that the Love County Sheriff's office arrested Mr. Janota on December 3, 2021 in Love County, Oklahoma. (Docket No. 109 at ¶¶ 25-27.)  Sheriff officers noticed that Mr. Janota was visibly intoxicated during his arrest.  Id. Mr. Janota was then transported to the Love County Justice Center. Id. ¶ 28.  Upon his admission, Mr. Janota and his mother notified several Justice Center employees, including detention officers Stefan Williams and Kara Hurst, and Jail Administrator Crystal Boyd, that he suffered from alcoholism and that he might experience withdrawal symptoms and seizures.  Id. ¶¶ 29, 83.  Defendants Williams, Hurst, and Boyd were also "directly involved in Mr. Janota's admission and personally observed his condition."  Id. ¶ 30.  They did not, however, refer Janota for medical evaluation or assessment.  Id. ¶ 32.

At a later unspecified time, Mr. Janota suffered "withdrawal symptoms" and suffered a seizure.  Id. ¶ 33.  This seizure ultimately caused him to fall and suffer a traumatic head injury. Id.  Williams, Hurst, and Boyd then "personally attended" to Mr. Janota, stood him in an upright position and attempted to move him, and contacted emergency services to transport him to a hospital.  Id. ¶¶ 34-36.

**Case No.** 24-CV-326-FAB-GLJ                                                                      3

Following Mr. Janota's injury, Love County Emergency Medical Services ("EMS") transported him by ambulance to an emergency room at Mercy Hospital Ardmore ("Mercy Ardmore"). Id. ¶ 37. Although Mr. Janota suffered another seizure in transit and "rapidly declin[ed]," the ambulance staff did not turn on the vehicle's light or sirens. Id. ¶¶ 38-39. Upon his arrival at the emergency room, Mercy Ardmore personnel did not order an immediate head CT scan even though Mr. Janota had "dangerously high blood pressure and tachycardia." Id. ¶¶ 41-42. Consequently, Mr. Janota remained tachycardic and with high blood pressure for the four hours he was at the hospital. Mercy Ardmore personnel also failed to notice or diagnose abrasions that were indicative of severe brain injury. Id. ¶¶ 43-44. An ambulance then transported Mr. Janota to the University of Oklahoma Medical Center, where he died from his injuries in the early morning of December 4, 2021. Id. ¶¶ 46-47.

On August 16, 2023, Mr. Janota's Estate, represented by his mother, sued several of the current defendants for their alleged misconduct in the District Court of Love County, Oklahoma. See Case No. CJ-2023-044. The Estate dismissed that lawsuit on February 8, 2024, however, without prosecuting the case or obtaining a summons to serve on defendants. Id. It then refiled this case in this Court on September 13, 2024, (Docket No. 2,) pursuant to Oklahoma's Saving Statute, 12 Okla. Stat. § 100, which

**Case No.** 24-CV-326-FAB-GLJ                                                    4

___

allows a plaintiff to refile a claim within one year of dismissal when the claim has otherwise expired under the applicable statute of limitations. (Docket No. 2 at ¶ 19.)

Plaintiff Estate has amended its federal complaint three times since then. The operative complaint — the Third Amended Complaint — alleges the following claims:

- Against officers Williams and Hurst, and administrator Boyd — (1) a 42 U.S.C. § 1983 claim for their deliberate indifference to Mr. Janota's Eighth and/or Fourteenth Amendment rights, and (2) a wrongful death claim under Oklahoma law;

- Against the Love County Board of County Commissioners, the Love County Jail Trust, and the Love County Sheriff in his official capacity ("Love County Defendants") — (1) a section 1983 claim for deliberate indifference to Mr. Janota's Eighth and/or Fourteenth Amendment rights, (2) a violation of his constitutional rights pursuant to Article II, § 9 of the Oklahoma Constitution, (3) a negligence claim pursuant to Oklahoma law, and (4) a wrongful death claim also pursuant to Oklahoma law;

- Against the Board of Trustees of The Love County Emergency Medical Services District ("EMS Board") — (1) a section 1983 claim for deliberate indifference to Mr. Janota's Eighth and/or Fourteenth Amendment rights, (2) a violation of his constitutional rights pursuant to Article II, § 9 of the Oklahoma Constitution, (3) a negligence claim pursuant to Oklahoma law, and (4) a wrongful death claim pursuant to Oklahoma law; and

- Against Mercy Ardmore — (1) a negligence claim and (2) wrongful death claim, both pursuant to Oklahoma law.

(Docket No. 109.)

**Case No.** 24-CV-326-FAB-GLJ                                                    5

All of the defendants moved to dismiss the Estate's claims on various grounds, including failure to state a claim, sovereign immunity, and untimeliness based on the statute of limitations. The magistrate judge found, however, that dismissal was warranted for reasons other than the statute of limitations. And because the Court may dismiss plaintiff's claims based on failure to state a claim, sovereign immunity, and supplementary jurisdiction grounds, the Court need not review those statute of limitations issues. The Court will explain its reasons for dismissal.

## STANDARD OF REVIEW

After a Report and Recommendation has been issued, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.; see also 28 U.S.C. § 636(b)(1). Any objections not properly raised, however, are waived for purposes of review by the Court. Klein v. Harper, 777 F.3d 1144, 1147 (10th Cir. 2015); Silva v. United States, 45 F.4th 1134, 1136 n. 2 (10th Cir. 2022). An objection to a report and recommendation is properly raised if it is both timely and specific. United States

v. One Parcel of Real Property Known as 2121 E. 30th St., 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute." Id. "In the absence of a proper objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate." Davis v. GEO Grp. Corr., Inc., No. CIV-16-00462-PRW, 2023 WL 2536727, at *1 (W.D. Okla. Mar. 16, 2023) (citing Summers v. State of Utah, 927 F.2d 1165, 1167-68 (10th Cir. 1991)). "Mere regurgitation of original arguments does not trigger the Court's obligation to perform de novo review." United States v. Kirby, No. 23-CR-026-JFH, 2023 WL 3956685, at *2-3 (E.D. Okla. June 12, 2023).

## AUTHORITY AND ANALYSIS

### I.  WILLIAMS, HURST, AND BOYD'S MOTIONS TO DISMISS (Docket Nos. 137-138)

Plaintiff sued officers Williams and Hurst, and administrator Boyd, in their individual capacities pursuant to (1) 42 U.S.C. § 1983 for their deliberate indifference to Mr. Janota's Eighth and/or Fourteenth Amendment rights under the United States Constitution, and (2) a wrongful death claim pursuant to Oklahoma law, see Docket No. 109 at 16-19, alleging that those three

defendants acted with deliberate indifference to his medical needs by failing to:

> i. refer Mr. Janota for an adequate medical assessment of his conditions prior to his head injury;
>
> ii. supervise Mr. Janota prior to his seizure and head injury;
>
> iii. provide appropriate emergency care once they discovered his head injury; and
>
> iv. secure and move him safely while waiting for emergency services to transport him to the hospital for his head injury.

(Docket No. 109 at 6, 16-17.) The magistrate judge concluded, however, that plaintiff failed to state a claim pursuant to section 1983 and recommended dismissal. (Docket No. 164 at 28.) The magistrate judge also recommended dismissing plaintiff's wrongful death claim because, among other reasons, it lacked specificity under Federal Rule of Civil Procedure 8(a). Id.

Plaintiff now objects to the magistrate judge's Report and Recommendation, arguing that the Third Amended Complaint states a section 1983 claim against Williams, Hurst, and Boyd. (Docket No. 171.) For the following reasons, plaintiff's objections are overruled.

## A. Plaintiff fails to state a section 1983 claim against Williams, Hurst, and Boyd.

State actors sued in their individual capacities may be liable pursuant to section 1983 for their deliberate indifference

**Case No.** 24-CV-326-FAB-GLJ                                                        8

to a pretrial detainee's serious medical needs.  See García v. Salt Lake Cty., 768 F.2d 303, 307 (10th Cir. 1985).  The Tenth Circuit Court of Appeals "recognize[s] two types of conduct constituting deliberate indifference" in those scenarios.  Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000).  The first type is when medical professionals "fail to treat a serious medical condition properly."  Id.  The second type is when prison officials "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." Id.

Plaintiff does not allege that Williams, Hurst, and Boyd were medical professionals who failed to treat Mr. Janota's medical conditions.  Plaintiff instead alleges that Williams, Hurst, and Boyd prevented Mr. Janota from receiving treatment or evaluation. Accordingly, the Court must examine the allegations against Williams, Hurst, and Boyd based on their roles as "gatekeepers" of Mr. Janota's medical treatment.  "The inquiry under a gatekeeper theory is not whether the prison official provided some care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1139 (10th Cir. 2023); see also Paugh v. Uintah Cnty., 47 F.4th 1139, 1154 (10th

Cir. 2022) ("[W]hen prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment, they may be liable for deliberate indifference.")  Whether a jailer was deliberately indifferent to his gatekeeping obligation depends on "the objective severity of the harm suffered as well as the subjective mental state of the defendant with respect to such harms."  Prince v. Sheriff of Carter Cnty., 28 F.4th 1033, 1043-44 (10th Cir. 2022).

A plaintiff can satisfy the objective component based on a delay in medical care if the delay resulted in substantial harm. Paugh, 47 F.4th at 1155.  "The 'substantial harm' may be based on 'an intermediate injury' . . . [o]r it may be based on the inmate's 'ultimate harm.'"  Id. (quoting Al-Turki v. Robinson, 762 F.3d 1188, 1193 (10th Cir. 2014) and Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)).  The Tenth Circuit Court of Appeals has "consistently held that death qualifies as a 'substantial harm' that satisfies the objective component."  Id. (listing cases). Here, plaintiff has alleged that Mr. Janota died from a head injury after passing out from a seizure.  The three officers do not challenge this objective component.

Instead, they challenge the subjective component of this test.  "To prevail on the subjective component, the prisoner must

show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." Martínez v. Beggs, 563 F.3d 1082, 1089 (10th Cir. 2009) (quotations and citations omitted). Whether an official had the requisite knowledge of a substantial risk may be demonstrated by inferences from circumstantial evidence or by allegations that the risk would have been reasonably obvious. Id.; see also Paugh, 47 F.4th at 1156.

To satisfy this knowledge requirement, plaintiff alleges that the three officers "personally observed" Mr. Janota's conditions. (Docket No. 109 at ¶¶ 30, 88.) But plaintiff does not state what these conditions were. At most, plaintiff states that Mr. Janota was "visibly intoxicated" when law enforcement arrested him. Id. at ¶ 26. But assuming that intoxication was the condition plaintiff references, "characteristics common to many intoxicated individuals do not present an obvious risk." Quintana v. Santa Fe Cnty. Bd. of Commissioners, 973 F.3d 1022, 1029 (10th Cir. 2020). Accordingly, plaintiff cannot satisfy this knowledge requirement by pointing to the officers' personal observations of Mr. Janota's intoxication.

Relying on Paugh v. Uintah Cnty., 47 F.4th 1139 (10th Cir. 2022), plaintiff also argues that the three officers knew Mr. Janota would suffer serious injury or death absent medical

intervention because Mr. Janota and his mother told each of them about his seizure risk. See Docket No. 109 at ¶¶ 29, 88; Docket No. 171 at 2. In Paugh, a doctor diagnosed a detainee with chronic alcoholism and alcohol withdrawal. 47 F.4th at 1148. Although the doctor found him stable enough for incarceration in jail, he instructed the jailers to bring the detainee back to the medical center if his alcohol withdrawal conditions worsened. Id. He also told them what symptoms to look out for. Id. But despite these clear instructions, and despite observing his withdrawal symptoms worsen, the jailers did not take him back to the medical center, and the detainee ultimately died. Id. at 1151-52.

The Tenth Circuit Court of Appeals in Paugh indicated that the doctor's instruction — combined with the defendants' observation of the detainee's worsening symptoms — could satisfy the subjective component's knowledge requirement. Id. at 1158 ("In sum, given Dr. Bradbury's instructions, a reasonable jury could find that it would have been 'obvious' to any reasonable jail official that Paugh needed medical assistance *if* the Individual Defendants saw Paugh's condition worsening.") (emphasis added). And because there was sufficient evidence that the defendants had observed his worsening conditions, the Tenth Circuit Court of Appeals held that those defendants were not entitled to qualified immunity. Id. at 1165.

**Case No.** 24-CV-326-FAB-GLJ                                    12

In other words, <u>Paugh</u> required the three officers to know more than the detainee's general susceptibility to alcohol withdrawal. Rather, the officers had to have some personal knowledge about his actual symptoms of withdrawal. But plaintiff did not allege that the officers observed any of the withdrawal symptoms Mr. Janota allegedly exhibited prior to his seizure. Furthermore, plaintiff did not allege how often or how seldom the three officers monitored Mr. Janota; whether they personally observed his symptoms; or whether Mr. Janota told the officers that he was experiencing withdrawal or seizure symptoms. Simply put, plaintiff fails to allege that the officers knew of any risk beyond a vague allegation that Mr. Janota could experience alcohol withdrawal symptoms at some point in the future. That is not sufficient to satisfy the subjective component's knowledge requirement.

For these reasons, plaintiff fails to satisfy the subjective component of deliberate indifference. Accordingly, plaintiff's section 1983 claim against officers Williams, Hurst, and Boyd, Sheriff's Office John Does 1-6, and Sheriff's Office Jane Does 1-2 is **DISMISSED.**

### B.    Plaintiff's wrongful death claim is dismissed against all defendants.

Plaintiff also alleges a wrongful death claim against Williams, Hurst, and Boyd based on 12 Okla. Stat. § 1053.  Among other reasons, the magistrate judge recommended dismissing plaintiff's state law claims because it lumped all of the defendants together without identifying any action or omission specific to each individual defendant.  See Docket No. 164 at 30 (relying on Fed. R. Civ. P. 8(a)).  Plaintiff did not object to this finding against any of the defendants, and the Court sees no reason to depart from this recommendation.  Accordingly, the Estate's wrongful death claim is **DISMISSED** against **all** defendants.

## II.  THE LOVE COUNTY DEFENDANTS' MOTION TO DISMISS (Docket No. 111)

Plaintiff also asserts multiple claims against the Love County defendants.[2]  These are:  (1) a section 1983 claim for deliberate indifference to Mr. Janota's Eighth and/or Fourteenth Amendment rights pursuant to the United States Constitution, (2) a violation of Mr. Janota's constitutional rights pursuant to Article 2, § 9 of the Oklahoma Constitution, and (3) a negligence claim pursuant to Oklahoma law.  See Docket No. 109.  To support

---

[2] The Love County Board of Commissioners, Love County Sheriff Andy Cumberledge, and the Love County Jail Trust.

**Case No.** 24-CV-326-FAB-GLJ                                            14

these claims, plaintiff alleges the Love County defendants failed

to:

  i.  provide screening, supervision, and adequate medical care for Mr. Janota;

  ii.  adequately train and supervise the Sheriff's staff and employees and the Love County Justice Center's staff and employees; and

  iii.  create and implement adequate policies and procedures for the medical assessment, treatment, and supervision of individuals in their custody.

(Docket No. 109 at ¶ 84.)  The magistrate judge ultimately

recommended dismissal of these claims as well.  (Docket No. 165.)

Over plaintiff's objections (Docket No. 170,) the Court agrees

that dismissal is warranted, albeit on slightly different grounds

than the magistrate judge.

### A.    Plaintiff's section 1983 claim against the Love County defendants is dismissed.

The magistrate judge determined that some of plaintiff's

allegations — such as failing to adequately screen, supervise, and

provide adequate medical care to Mr. Janota — sought to punish the

Love County defendants for their employees' misconduct. See Docket

No. 165 at 11.  But, as the magistrate judge correctly pointed

out, "municipalities are responsible only for their own illegal

acts and are not vicariously liable under § 1983 for their

employees' actions." George v. Beaver Cnty. Bd. of Comm'rs, 32

F.4th 1246, 1253 (10th Cir. 2022) (quotations and citations

omitted); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Accordingly, plaintiff cannot state a claim against the Love County defendants based on vicarious liability.

Nevertheless, claims against a municipality can survive dismissal if the plaintiff alleges a "failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." Waller v. City & Cty. of Denver, 932 F.3d 1277, 1283 (10th Cir. 2019). Failure to adopt a policy or custom can form the basis of section 1983 liability as well. See Barney v. Pulsipher, 143 F.3d 1299, 1308 (10th Cir. 1998). Because plaintiff alleges that the Love County defendants failed to train or supervise their employees and adopt an adequate policy, the Court will examine the sufficiency of both theories.

### 1. Failure to Train or Supervise

To survive dismissal, plaintiff must allege: (1) the existence of a policy or custom involving deficient training or supervision; (2) the policy or custom's causation of an injury, and (3) the adoption of a policy or custom with deliberate indifference. See Lance v. Morris, 985 F.3d 787, 800 (10th Cir. 2021) (discussing the elements of failure to train); see also Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty. Colorado, 30 F.4th 1181, 1189 (10th Cir. 2022) (applying Monell

standard to failure to train and failure to supervise claims). Plaintiff cannot simply allege that there were "general deficiencies" in the training program or supervision. López v. LeMaster, 172 F.3d 756, 760 (10th Cir. 1999), *abrogated in part on other grounds,* Brown v. Flowers, 974 F.3d 1178, 1182 (10th Cir. 2020). Rather, plaintiff "must identify a specific deficiency" in the training program "closely related" to Mr. Janota's ultimate injury. Id.; see also City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989).

Plaintiff does not indicate, however, what specific training or supervision the Love County defendants failed to provide. Nor does plaintiff say how the Love County defendants' failure to train or supervise their employees actually caused Mr. Janota's injuries or that their omissions stemmed from their deliberate indifference. And although the Court only considers the allegations in plaintiff's Third Amended Complaint, Plaintiff's Objection to the magistrate judge's Report and Recommendation also fails to allege any specific deficiency or causal link to Mr. Janota's injuries. See Docket No. 170 at 3. Accordingly, plaintiff fails to state a claim against the Love County defendants based on a failure to train or supervise theory.

### 2.    Failure to Adopt a Municipal Policy

Plaintiff also alleges that the Love County defendants failed to have adequate policies in place regarding the "medical assessment, treatment, and supervision of individuals in their custody." (Docket No. 109 at ¶ 84.) Among other elements, plaintiff must allege that the Love County defendants had "actual or constructive notice" that their failure to adopt those policies was substantially certain to result in a constitutional violation, and that they "consciously or deliberately cho[se] to disregard the risk of harm." N.E.L. v. Douglas Cnty., Colorado, 740 F. App'x 920, 933 (10th Cir. 2018). But the Third Amended Complaint does not allege that defendants had actual or constructive notice that their failure to adopt such a policy would result in a constitutional violation. Nor does plaintiff allege that the Love County defendants consciously or deliberately chose to disregard this risk. Thus, plaintiff also fails to state a claim against the Love County defendants based on a failure to adopt adequate medical policies theory.

For the reasons explained above, plaintiff fails to state a section 1983 claim against the Love County defendants. Accordingly, the Estate's claims against the Love County defendants are **DISMISSED.**

### B. Plaintiff's state law claims against the Love County defendants are dismissed.

Plaintiff Estate also filed two state law claims against the Love County defendants.  These are (1) a violation of Article II, § 9 of the Oklahoma Constitution, and (2) a negligence claim.  See Docket No. 109 at 8-11, 15-16.  Both claims essentially contain the same allegations — that the Love County defendants failed to provide adequate medical care to Mr. Janota, failed to train and supervise their employees, and failed to adopt adequate policies to protect their inmates.  Id.  The Love County defendants are, however, immune to both claims pursuant to Oklahoma law.[3]

The Oklahoma Governmental Torts Claims Act ("GTCA") immunizes "the state, its political subdivisions, and all of their employees acting within the scope of their employment" from liability for torts.  51 Okla. Stat. § 152.1(A).  The GTCA defines a "tort" as "a legal wrong, independent of contract, involving

---

[3] In his Report and Recommendation, the magistrate judge did not examine whether these claims could survive a motion to dismiss.  Instead, if the Court dismissed all of plaintiff's federal claims, the magistrate judge recommended that the Court decline supplemental jurisdiction over these state law claims.  (Docket No. 165 at 13.)  Plaintiff objected to this recommendation, arguing that declining to exercise supplemental jurisdiction would affect an outright denial of these claims because they have likely expired under the statute of limitations and that Oklahoma's Savings Statute is unavailable.  (Docket No. 170 at 5.) Accordingly, plaintiff urges the Court to retain supplemental jurisdiction over its state law claims.  Although the Love County defendants have sovereign immunity, the Court would also decline supplemental jurisdiction for the reasons explained later in this Opinion.

violation of a duty imposed by general law, statute, the Constitution of the State of Oklahoma, or otherwise, resulting in a loss to any person . . . as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment." 51 Okla. Stat. § 152(17). Thus, "the State's immunity from suit extend[s] even to torts arising from alleged deprivations of constitutional rights." Barrios v. Haskell Cnty. Pub. Facilities Auth., 432 P.3d 233, 238 (Okla. 2018).

The Oklahoma Supreme Court has explicitly held that the GTCA immunizes a municipality from an inmate's claim for denial of medical care based on Article II, §§ 7 and 9 of the Oklahoma Constitution. Barrios, 432 P.3d at 239 ("[B]ecause the Legislature invoked the State's sovereign immunity as to constitutional torts via the GTCA, Sections 7 and 9 of Article II of the Oklahoma Constitution do not allow an inmate to bring a tort claim for denial of medical care."). Accordingly, the Love County defendants

**Case No.** 24-CV-326-FAB-GLJ                                    20

are immune to claims based on denial of medical care to Mr. Janota.

See Docket No. 109 at ¶¶ 60(a-e, h, j), 84(a-c).[4]

The GTCA also immunizes municipalities from torts arising from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility."  51 Okla. Stat. § 152(25).  The Oklahoma Supreme Court has clarified that this provision

> withhold[s] the waiver of sovereign immunity for any loss or injury, whether to an inmate or other person, resulting from the operational level acts required to furnish the services of a penal institution, including the construction and repair of the facility; the security of the facility; the employment of personnel; the utilities and furnishings of the facility; the food, clothing, items for hygiene and other basic personal items needed by inmates or other persons; the educational, rehabilitative, communicational, recreational and medical and health services or any other service provided for inmates or other persons; the assignment of an inmate to a facility or a cell; and the release of an inmate; with the single exception of loss to persons not in custody caused by an accident involving a motor vehicle operated by the Department of Corrections.

Medina v. State, 871 P.2d 1379, 1384 n. 13 (Okla. 1993).

Accordingly, claims for "negligent hiring, training, supervision

---

[4] "Although the Oklahoma Supreme Court distinguished Barrios in Payne v. Kerns [, 467 P.3d 659 (Okla. 2020)], by finding a private right of action under Section 9, that holding is limited to the cause of action having accrued before the Oklahoma legislature's amendment to the Oklahoma Governmental Tort Claims Act became effective in 2014, which extended immunity to alleged deprivations of constitutional rights." Gill v. GEO Grp., Inc., No. CIV-23-332-PRW, 2024 WL 1390904, at *4 (W.D. Okla. Mar. 31, 2024).

and retention are [also] subject to dismissal pursuant to §
155(25), because they all result from operation of a jail or
correctional facility." Chrisman v. Bd. of Cnty. Comm'rs of
Oklahoma Cnty., No. 17-CV-1309, 2018 WL 4291761, at *9 (W.D. Okla.
Sept. 7, 2018); see also Flurry v. Bd. of Cnty. Comm'rs, No. 15-
CV-90, 2015 WL 1542373, at *5 (W.D. Okla. Apr. 7, 2015).
Accordingly, the Love County defendants are immune to state law
claims based on their failure to train or supervise their employees
as well. See Docket No. 109 at ¶¶ 60(f, h, j), 84(d-e).

Finally, municipal operators of jails are immune from
torts arising from their "failures to enforce institutional
policies," "discretionary functions [that] are limited to policy-
making or planning level actions," and "operational level actions
by state officers or employees at a penal institution." Medina,
871 P.2d at 1383-84 (citing 51 Okla. Stat. §§ 155(4), 155(5), and
(25) in its previous form). In other words, they are immune from
failing to adopt rules, regulations, or written policies pursuant
to Oklahoma law. See Pack v. Jim, No. 24-CV-42, 2025 WL 2214564,
at *10 (N.D. Okla. July 1, 2025). Accordingly, the Love County
defendants are immune to claims based on their failure to adopt or
"carry out" unidentified policies and procedures, too. See Docket
No. 109 at ¶¶ 60(f-h, j), 84(f).

For these reasons, the Love County defendants are immune from plaintiff's state law claims, and the state law claims against them must also be **DISMISSED.**

### III. THE EMS BOARD'S MOTION TO DISMISS (Docket No. 113)

Following his injury at the jail, plaintiff alleges that Love County EMS transported Mr. Janota by ambulance to Mercy Ardmore's emergency room. (Docket No. 109 at ¶ 37.) Mr. Janota suffered another seizure in transit. Id. ¶ 38. "Despite Mr. Janota's rapidly declining status," however, Love County EMS did not turn on the ambulance's light or sirens. Id. ¶ 39. Based on these facts, plaintiff asserts the following claims against the Love County EMS's Board of Trustees: (1) a section 1983 claim for deliberate indifference to Mr. Janota's Eighth and/or Fourteenth Amendment rights pursuant to the United States Constitution, (2) a violation of his rights pursuant to Article II, § 9 of the Oklahoma Constitution, and (3) a negligence claim pursuant to Oklahoma law. See Docket No. 109 at 12-14. Dismissal of these claims is warranted as well.

### A. Plaintiff fails to state a section 1983 claim against the EMS Board.

Plaintiff is suing an entity — the Love County EMS Board of Trustees — not a Board member, a Board employee, or even the ambulance driver transporting Mr. Janota. Therefore, regardless

of whether the EMS Board is a medical contractor acting under color of state law or a municipality, the EMS Board cannot be liable for its employee's misconduct based on vicarious liability. See Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1144 (10th Cir. 2023). Instead, plaintiff must allege (1) an official policy or custom, or a systemic failure of medical policies and procedures, (2) causation, and (3) deliberate indifference. Id. at 1145. But plaintiff does not mention any official policy or custom promulgated by the EMS Board, nor does it allege systemic failures of the Board's medical policies and procedures. Because plaintiff fails to allege a section 1983 claim against the EMS Board, this claim is also **DISMISSED.**

B. **The Court declines supplemental jurisdiction over plaintiff's remaining state law claims.**

At this point, there are no federal law claims left in this lawsuit. Therefore, the Court must decide whether to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Plaintiff urges this Court to do so, arguing that its claims have likely expired under the statute of limitations and that it cannot save them based on 12 Okla. Stat. § 100. (Docket Nos. 170 at 5; 172 at 3.)

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any

**Case No.** 24-CV-326-FAB-GLJ                                                    24

remaining state claims." Koch v. Del City, 660 F.3d 1228, 1248 (10th Cir. 2011); see also 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over state-law claims if "the district has dismissed all claims over which it has original jurisdiction"). Nevertheless, a district court has discretion to adjudicate the merits of the state-law claims when "the values of judicial economy, convenience, fairness, and comity" indicate that retaining jurisdiction over the state-law claims would be appropriate. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349-50 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, [however,] the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n. 7.

The Court is sympathetic towards plaintiff's predicament. The Court cannot say, however, that its predicament is unfair. Indeed, plaintiff originally filed this lawsuit in the District Court of Love County on August 16, 2023. See Case No. CJ-2023-044. It then dismissed that lawsuit on February 8, 2024, without prosecuting the case or even obtaining summons to serve on defendants. Id. It then refiled the case in this Court on September 13, 2024, and added the EMS Board as a defendant.

(Docket No. 2.)    By doing so, the Estate filed that Complaint pursuant to Oklahoma's Saving Statute, 12 Okla. Stat. § 100, which allows a plaintiff to refile a claim within one year of dismissal when the claim has otherwise expired under the applicable statute of limitations.    But section 100 "operates to save an action for only one refiling after the statute of limitations has run." Pointer v. W. Heights Indep. Sch. Dist., 919 P.2d 5, 6 (Okla. 1996).

In other words, plaintiff risked its last shot at litigation by filing this action in federal court pursuant to Oklahoma's Savings Statute.    Had the Estate refiled its claims in state court, and had they been removed to federal court, the Court could have simply declined supplemental jurisdiction and remanded the state claims back to state court.    Instead, plaintiff put itself in this predicament.    Accordingly, concerns of fairness weigh against the Estate.

Concerns of judicial efficiency and fairness to the other parties also weigh against the Estate.    Indeed, plaintiff has filed four complaints against the EMS Board (Docket Nos. 2, 37, 85, 109) and five complaints against various other defendants. The EMS Board has consequently filed three motions to dismiss (Docket Nos. 59, 90, 113,) as have multiple defendants.    Therefore, not only have the repeated amendments backlogged the Court, but

they have also deprived the defendants of any finality.  In any event, there is substantial dispute on whether plaintiff even provided timely notice to the EMS Board as required by the GTCA. See Docket No. 166 at 16.  Although the magistrate judge and the Court do not opine on the success of those arguments, there is a danger that the Court and the parties will spend significant time and resources on this issue, only for the result to be the same. Accordingly, there are no compelling reasons for retaining jurisdiction.  Plaintiff's state law claims against the EMS Board are **DISMISSED.**

## IV.    MERCY ARDMORE'S MOTION TO DISMISS (Docket No. 116)

Plaintiff has one remaining claim — a state law negligence claim against Mercy Ardmore.  (Docket No. 109 at 11.)  The Court adopts its previous reasoning, and declines to exercise supplemental jurisdiction over this claim.  This claim is therefore also **DISMISSED.**

## V.    POSSIBILITY OF AMENDMENT

The magistrate judge recommended denying leave to amend because plaintiff has essentially amended its complaint four times across her federal and state cases.  See Docket Nos. 164 at 30; 165 at 14.  Plaintiff failed to object to this recommendation or otherwise request leave to amend.  See Docket Nos. 170, 171.  The Court sees no legal error in the magistrate judge's recommendation.

**Case No.** 24-CV-326-FAB-GLJ                                                    27

Indeed, a court may refuse leave to amend "on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Duncan v. Manager, Dep't of Safety, City and Cnty. of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005) (internal quotation marks omitted). As previously explained, several of these factors are present, including delay, prejudice to the defendants, and repeated failures to cure deficiencies by amendments previously allowed. Accordingly, the Court will not allow the Estate to amend its Complaint again.

CONCLUSION

For all of the above reasons, the Court **ADOPTS** the magistrate judge's recommendations contained in Docket Nos. 164-167. Accordingly, defendants' Motions to Dismiss (Docket Nos. 111, 113, 116, 137, 138) are **GRANTED**, and all of plaintiff's claims are **DISMISSED with prejudice.**

Judgment shall be entered accordingly.

This case is now closed for statistical purposes.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 15, 2026.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE